9 F.3d 1552
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charles McINTOSH, Petitioner-Appellant,
v.
Edward MYERS, Superintendent of C.T.F.; Attorney General of
the State of California, Respondents-Appellees.
 No. 89-55892.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 1, 1993.*
Decided Nov. 8, 1993.
 
 Before: SCHROEDER, D.W. NELSON, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Charles McIntosh, a California state prisoner, appeals pro se the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his conviction for voluntary manslaughter. We have jurisdiction pursuant to 28 U.S.C. § 2253, and review de novo. Thomas v. Lewis, 945 F.2d 1119, 1122 (9th Cir.1991). We affirm.[1]
 
 Identification Testimony
 
 3
 McIntosh contends that his due process rights were violated by the state court's admission of eyewitness identification testimony at trial, because the witnesses had previously identified McIntosh in an impermissibly suggestive out-of-court identification procedure. This contention is without merit.
 
 
 4
 Convictions based on eyewitness identification testimony at trial following a pretrial identification procedure must be set aside if the pretrial identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable identification." Simmons v. United States, 390 U.S. 377, 384 (1968). If the pretrial identification procedure is impermissibly suggestive, the evidence may nonetheless be admitted unless, in the totality of the circumstances, the corrupting effect of the identification procedure outweighs the reliability of the testimony. Manson v. Brathwaite, 432 U.S. 98, 114 (1977); United States v. Gregory, 891 F.2d 732, 734 (9th Cir.1989). The factors that must be considered in determining the reliability of identification testimony are: (1) the witness' opportunity to view the suspect at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the suspect, (4) the level of certainty shown by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972).
 
 
 5
 Here, two witnesses identified McIntosh at trial as the man they had seen earlier in their apartment building. McIntosh contended that the identifications were tainted because the witnesses had previously been asked to identify him from a single photograph, and because a lineup was impermissibly suggestive.[2] Following a pretrial hearing, the trial court determined that the identifications were "not the product of anything inappropriate," but instead were "based entirely upon their observations on the day of the incident," and admitted the identification testimony.
 
 
 6
 The trial court explicitly found that the witnesses had a sufficient opportunity to view the suspect, and we defer to this factual finding. See Biggers, 409 U.S. at 199-200; Sumner v. Mata, 455 U.S. 591, 597 n. 10 (1982) (statutory presumption of correctness applies to state court's findings regarding Biggers factors). The defendant threatened one witness with violence, and was seen arguing loudly with a tenant by the other witness; these incidents undoubtedly caused both witnesses to regard the defendant attentively. Both witnesses described the defendant to police officers, and there is no indication in the record or the transcripts that these descriptions were materially inaccurate. The witnesses both testified that they were certain that the photograph they were shown was of the man they had seen in their apartment building, and also testified that they recognized the defendant immediately at the lineup. Finally, the witnesses were shown the photograph of the defendant just four days after the incident, and attended the lineup approximately two months after the incident.
 
 
 7
 We find that, in the totality of the circumstances, the identification testimony has sufficient indicia of reliability to outweigh any possible corrupting effect of the pretrial identification procedures. See Biggers, 409 U.S. at 199-200; Manson, 432 U.S. at 114. Accordingly, the district court did not err in upholding the admission of this testimony.
 
 Sufficiency of the Evidence
 
 8
 In deciding whether the evidence is sufficient to sustain a conviction, we must view that evidence in the light most favorable to the prosecution and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Mikes v. Borg, 947 F.2d 353, 356 (9th Cir.1991), cert. denied, 112 S.Ct. 3055 (1992). This standard must be applied in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n. 16. If the record could support conflicting inferences, this Court must presume that the factfinder resolved such conflicts in favor of the prosecution, and must defer to that resolution. Id. at 326; Payne v. Borg, 982 F.2d 335, 338 (9th Cir.1992), cert. denied, 114 S.Ct. 131 (1993).
 
 
 9
 Here, McIntosh contends that there was insufficient evidence for the jury to conclude that the victim's blood was found on his knife and jacket.[3] Dr. Schwecke testified for the prosecution that the blood from McIntosh's knife and jacket contained the same enzymes as the victim's blood. He further testified that the victim had type A blood, and the blood found on the knife and jacket exhibited A, B and O activity; he opined that, although the results were inconclusive, this blood could have been type A mixed with contaminants or blood from another person. Dr. Inman testified for the defense that, based on Dr. Schwecke's results, the blood on the knife and jacket could not have come from the victim. Inman also testified that he did not perform any tests on the blood, but instead based his findings on Schwecke's data.
 
 
 10
 Although the record could support conflicting inferences, we find that a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have concluded that the blood on the knife and jacket belonged to the victim, at least in part. See Jackson, 443 U.S. at 319, 326; Payne, 982 F.2d at 338. We further find, considering this evidence along with the eyewitness testimony and other evidence presented at trial, that there is sufficient evidence to uphold McIntosh's conviction for voluntary manslaughter. See Jackson, 443 U.S. at 319.
 
 
 11
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, McIntosh's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 As a preliminary matter, we note that several of the claims raised in McIntosh's brief to this Court were not presented to the district court. We therefore decline to reach these claims, and restrict our review to claims properly raised before the district court. See United States v. Flores-Payon, 942 F.2d 556, 558 (9th Cir.1991). Similarly, we decline to address McIntosh's ineffective assistance of counsel claims, because they were not raised in his appellate brief to this Court. See Officers for Justice v. Civil Serv. Comm'n of San Francisco, 979 F.2d 721, 726 (9th Cir.1992), cert. denied, 113 S.Ct. 1645 (1993)
 
 
 [2]
 McIntosh argued that two aspects of the lineup were impermissibly suggestive. First, due to some confusion among the other participants in the lineup, McIntosh stood alone on the stage for 20 to 30 seconds until the next participant entered. Second, when McIntosh entered the viewing area, one of the witnesses stated loudly in Spanish "that's him." This comment was overheard by other witnesses
 
 
 [3]
 McIntosh does not contest the sufficiency of the evidence used to convict him in any other respect